## THE COUNTY OF RICHLAND
### v.
### MORTIMER MILLARD.

CONTRACTS—CONSTRUCTION.—Appellee contracted in writing with appellant to act as its attorney in defense of certain suits relating to bonds, and for his services was to receive $500 as retaining fee, and an additional fee of seven and one-half per cent. upon the amount of bonds, "in the event the county shall not be obliged to issue said bonds." It was also agreed that "if any compromise is made without the consent of the said Millard (appellee), he shall be entitled to the seven and one-half per cent. on the whole amount of bonds claimed, and such percentage shall be due when the validity of the bonds is determined in favor of said county." The contract was made when a mandamus was pending to compel the issue of the bonds. The Supreme Court, in another proceeding by a holder of certain of the bonds to recover interest, decided that the bonds were invalid. *Held*, that the present contract is to be considered as one to prevent the issuance of the bonds, and when this was decided by a court of last resort, the contingency would arise upon which the percentage would be payable, and plaintiff must show that he has performed or been relieved from performance by the act of the other party, before he can recover.

ERROR to the Circuit Court of Richland county; the Hon. WM. C. JONES, Judge, presiding. Opinion filed October 6, 1881.

Messrs. BELL & GREEN, and Mr. AARON SHAW, for plaintiff in error; that the plea of the general issue verified, put in issue the execution of the alleged contract, cited Hinton v. Husbands, 3 Scam. 187; P. & O. R. R. Co. v. Neill, 16 Ill. 269.

Such contracts can only be proved by the records of the board: McHaney v. County of Marion, 77 Ill. 488; County of Vermillion v. Knight, 1 Scam. 97.

County commissioners have no power to make a contract, except when setting as a court: Com'rs v. Jones, Breese, 237.

The contract is *ultra vires* and void: 1 Dillon on Mun. Cor. § 381; Marsh v. Fulton Co. 10 Wall. 676; Com'rs v. Cox, 6 Ind. 403; Estep v. Keokuk Co. 18 Ia. 248; Clark v. Polk Co. 19 Ia. 248.

County of Richland v. Millard.

If void, no act can render it valid: Shawneetown v. Baker, 85 Ill. 563; Gaddis v. Richland Co. 92 Ill. 119.

As to the difference between a county as a corporation and other corporations: Hamilton Co. v. Mighels, 7 Ohio St. 109; Symunds v. Clay Co. 71 Ill. 355.

Mr. JAS. C. ALLEN and Mr. R. A. HALBERT, for defendant in error; that a county may appoint a committee to make contracts, cited Gillett v. Sup'rs, 67 Ill. 256; Alton v. Mulledy, 21 Ill. 76; McClaughry v. Hancock Co. 46 Ill. 357; Galena v. Corwith, 48 Ill. 423; Town of Mt. Vernon v. Patton, 94 Ill. 65.

A municipal corporation may ratify the unauthorized acts of its agents, which are within the corporate powers: Walter v. Trustees, 12 Ill. 64; Dillon on Mun. Corp. § 385; Shawneetown v. Baker, 85 Ill. 565; Town of New Athens v. Thomas, 82 Ill. 259.

The county is estopped from denying the existence as well as the validity of this contract: Mortel v. City of E. St. Louis, 94 Ill. 67; Logan Co. v. City of Lincoln, 81 Ill. 156; C. R. I. & P. R. R. Co. v. Joliet, 79 Ill. 25.

Contingent fees to an attorney are not against law or public policy: Newkirk v. Cone, 18 Ill. 449.

In respect to contracts made within the scope of their powers, municipal corporations stand on the same footing as private corporations: City of E. St. Louis v. E. St. Louis G. & C. Co. 98 Ill. 415.

In construing a contract, the court will look to the motive which led to it, and the object intended to be affected by it: Davis v. Barney, 1 Gill. & J. 382.

WALL, J.    The declaration in this case alleged that an action by mandamus was pending in the Circuit Court of Lawrence county, to compel the board of supervisors of Richland county to issue $100,000 of its bonds, in part payment of an alleged subscription of $200,000 to the stock of the Grayville & Mattoon Railroad Company; that the defendant county having determined to contest said suit and other suits that might be brought to obtain its bonds in payment of said supposed sub-

scription, and not to issue its bonds until compelled by the court of last resort, made a written agreement with the plaintiff, employing him as an attorney at law, to act in conjunction with the States attorney in defending all suits then or to be brought to compel the issuing of said bonds, and take such steps as might be necessary to protect the legal rights of the county in the premises, and to pay for such services $500 as a retainer, and the further sum of $15,000 in the event it should be determined by the court to which the question might be carried, that the defendant was not required by law to issue such bonds, or in case the bonds should be issued without the consent of plaintiff before the liability to do so was established by the court of last resort; that plaintiff in pursuance of the contract, took such steps, and such proceedings were had in the said mandamus case; that the same was taken by the said county from the judgment of the circuit court to the Appellate Court 4th District Ills., and said Appellate Court determined that said county was not by law required to issue said bonds, which was the only suit prosecuted to final judgment ever instituted to compel the issuance of said bonds; that said suit was not taken to the Supreme Court, and that in a certain suit in which one Gaddis was plaintiff and said county was defendant, involving the question whether the county was bound to issue said bonds, the Supreme Court determined that said subscription was void, and that the county was not bound to issue said bonds. The plea of non-assumpsit was filed, and the cause tried by the court without a jury. Plaintiff recovered the sum of $15,000, and the county brings the case here for review.

The plaintiff introduced in evidence the following contract, signed by the chairman of the board of supervisors, and by four persons as a committee of the board on behalf of the county, and by the plaintiff on behalf of himself: "This agreement, made by and between the county of Richland, Illinois, and M. Millard, witnesses, that the said M. Millard is hereby retained and employed as counsel for said county, to act in conjunction with the State's attorney in defending all such suits as are or may be instituted against said county, for the

County of Richland v. Millard.

purpose of compelling it to issue bonds to the Grayville and Mattoon Railroad Company, and to take such steps in respect to the issuing of said bonds as may be necessary to save and protect the legal rights of the county in the premises; and in consideration thereof the said M. Millard shall receive, as consideration for his services, the sum of five hundred dollars as a retaining fee, and seven and a half per cent. in addition, in the event the county shall not be obliged to issue said bonds on the amount claimed by said company, being $200,000.   It is also agreed, that if any compromise is made without the consent of the said M. Millard, he shall be entitled to the seven and a half per cent. on the whole amount of bonds claimed; and such percentage shall be due when the validity of such bonds is determined in favor of said county by the court to which the question of the validity of such bonds may be finally decided, it being understood the services of said M. Millard shall be performed when a decision is obtained which determines that said county is not required by law to issue said bonds.

" Dated February 8, 1877."

It is urged that the evidence fails to show that the county by the proper action of its board of supervisors, made this contract or empowered the chairman or committee to make it. There is evidence to show that the county board by resolutions duly passed, authorized the employment of counsel to defend the mandamus case in Lawrence county, and the bill of exceptions contains the statement that there was in evidence, also the proceedings of the board of supervisors of Richland county, by which the retaining fee of five hundred dollars, mentioned in the above contract, was fully paid by said county."

There was other record evidence that the board recognized the existence of the contract but declined to pay the claim made under it, upon the ground that the services had not been fully performed; and there was also proof that the county had paid the bills for printing and other expenses incurred by plaintiff's order in the several suits which involved these bonds, and we are of opinion that there was testimony

sufficient to warrant the conclusion, that while the contract as made embraced a wider scope than contemplated by the original resolution (which related merely to the defense of the one case in Lawrence county), yet that the contract as made by the chairman and committee was ratified. To say the least, the evidence tended to establish that proposition and was *prima facie* enough.

It is objected that the contract is vicious and must be condemned, because it contains the provision that the plaintiff should be entitled to receive his whole fee in case the county should by compromise issue the bonds or any part of them without his consent. We discover nothing objectionable in such a provision. The plaintiff proposed to make a full and complete defense for the county, involving an unknown amount of effort, and upon the contingency of success was to receive a per centage upon the bonds in question, and it was not improper to insert that he should not be deprived of his fee without his consent. It is quite clear we think that if the contract had not contained this provision, he might have insisted upon substantially the same result, for if he was willing and ready to perform his undertaking, he could require the county to do the same. Town of Mt. Vernon v. Patton, 94 Ill. 65.

Nor can we say that the sum contracted for is so much out of proportion to the amount involved, and the services probably necessary as to be deemed unconscionable, or to raise an imputation of fraud or of any indirect or sinister action by the county officials. Whether the contract might be deemed ultra vires because it stipulates for a contingent fee, we do not now determine, as we think that, on another ground, the case must be reversed. It appeared on the trial that the Appellate and Supreme Courts had decided, as alleged in the declaration, the decision of the former being upon a writ of error sued out by the county upon the adverse decision of the circuit court in the mandamus case, and the decision of the Supreme Court being in a suit brought by one Gaddis to recover upon certain coupons which were attached to certain of the bonds in question, and there was also in evidence " the files and records of the Circuit Court of Richland county in a chancery suit to

enjoin the issuing of $50,000 of said bonds, and the levying of a tax to pay the interest on those before issued, said suit being brought by tax payers of the county."

It seems therefore that a part or all of these bonds in dispute were in fact issued, and that litigation arose concerning them. How they came to be issued or when does not appear. Possibly it was in consequence of the decision of the mandamus case by the circuit court, and before the writ of error was prosecuted.

It is not shown that there was any other proceeding to compel the county to issue. It does not appear that the county voluntarily issued, with or without the consent of plaintiff, yet it is sure the bonds, or some of them, were issued. Now, upon examination of the contract it will be seen that the percentage provided for is to be paid to the plaintiff upon a strict and certain contingency, to-wit: " In the event the county shall not be obliged to issue said bonds," or in the event of a compromise without the consent of plaintiff. Reliance is placed by appellee upon the language found in the subsequent clause, that it is " understood the services of the said W. Millard shall be performed when a decision is obtained which determines that said county is not by law required to issue said bonds." This language is to be read with what precedes, and in the light of the then situation, which was that a mandamus case was pending to enforce the issuance of the bonds, and was in contemplation of the result in that proceeding or other proceedings to compel the county to issue, in which the question was to be, *must* the county issue the bonds? *Is the county required* by law to issue said bonds? Not, *have* the bonds been issued under circumstances which render them valid? or, *was* the county required by law to do so? Giving the language this reading makes it harmonize with what precedes.

It seems to have been suggested, perhaps, in connection with the provision protecting the plaintiff against the result of a compromise without his consent. Whatever may have been the special object of its insertion, we cannot consider it as in any just sense a qualification of the unambiguous terms

contained in the first clause of the contract. Taking the whole contract and construing all its provisions in view of the circumstances, we think it very clear that the true scope and purpose of it was to prevent the issuance of the bonds, and when this was accomplished, through the decision of the court of last resort, or if there was a compromise without plaintiff's consent, the contingency would arise upon which the per centage would be payable, and this is manifestly a contract different from that laid in the plaintiff's declaration. To prevent the issuance of the bonds is one thing; to procure an adjudication after they are issued that they are invalid, is quite another thing. No doubt the Supreme Court has determined that the subscription was void, and that the bonds were illegally issued, yet this decision was in a suit upon the coupons of some of the very bonds which plaintiff had undertaken to restrain, and presumably these bonds are outstanding and may yet become the source of much annoyance to the county.

It may be, notwithstanding this, that plaintiff is entitled to his fee; that these bonds were issued through the fault of the county and without the fault or consent of the plaintiff; but this, if true, is not shown. As we read the contract the plaintiff was to prevent the issuance of the bonds, unless issued under a compromise without his consent, and to recover the amount fixed by the contract, he must show that he has performed, or by the act of the other party been relieved from performing his part of it. In reply to the suggestion that the judgment may rest on the common count, it may be said that there is no proof of the value of the services. We are of opinion that the proof does not support the finding on the special count.

The judgment will be reversed and the cause remanded for another trial.

Reversed and remanded.